# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Tyler Lukat, | Civ. No. 18-2680 (JRT/BRT) |
| Petitioner, | |
| v. | **REPORT AND** |
| Nate Knutson, | **RECOMMENDATION** |
| Respondent. | |

Tyler Lukat, Reg. No. 238850, Moose Lake Correctional Facility, *pro se* Petitioner.

Peter R. Marker, Esq., Assistant Ramsey County Attorney counsel for Respondent.

BECKY R. THORSON, United States Magistrate Judge.

  Petitioner Tyler Lukat seeks habeas relief under 28 U.S.C. § 2254. (Doc. No. 1, Habeas Pet.; Doc. No. 2, Mem. of Law in Supp. of Habeas Pet.) Petitioner argues that the trial court violated his "right to fair trial by jury under the Sixth Amendment and Fifth Amendment" by admitting evidence of Petitioner's three prior convictions for motor-vehicle theft. (Habeas Pet. 6.) For the reasons set forth below, this Court recommends that the petition be denied.

**I.     Background**

  **A.     State-Court Trial**

  In February 2016, police found Petitioner driving a Honda Civic whose owner had reported it stolen. *See State v. Lukat*, No. A17-0581, 2018 WL 817841, at *1 (Minn. Ct. App. Feb. 12, 2018); *see also State v. Lukat*, Case No. 62-CR-16-6279 (Minn. Dist. Ct.)

(*Lukat* Register), *available at* http://pa.courts.state.mn.us (last accessed August 8, 2019) (indicating incident date). While searching the car, an officer found a handgun under the passenger seat. *See Lukat*, 2018 WL 817841, at *1. Minnesota authorities charged Petitioner with one count of possessing a firearm after being convicted of a crime of violence and one count of theft by taking a motor vehicle without the owner's consent. *See id.*; *Lukat* Register. Petitioner was tried in November 2016. *See Lukat* Register.

At trial, the prosecution sought to admit evidence that Petitioner had three prior convictions for motor-vehicle theft. *See Lukat*, 2018 WL 817841, at *2. Under Minnesota law, "[e]vidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b)(1). Such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," but only if, among other things, the prosecution "gives notice of its intent to offer the evidence"—including notice of "the specific purpose(s) for which the evidence will be offered"—and "the probative value of the evidence is not outweighed by its potential for unfair prejudice to the defendant." *Id.* at 404(b)(1), (2); *see also State v. Welle*, 870 N.W.2d 360, 364 (Minn. 2015) (discussing standards and noting that Minnesota courts often refer to prior bad-act evidence as "*Spriegl* evidence," referring to *State v. Spriegl*, 139 N.W.2d 167, 169 (Minn. 1965)).

The prosecution argued that Petitioner's prior convictions were relevant to prove knowledge or absence of mistake – that is, "that Lukat knew or had reason to know that he did not have consent to drive the Civic." *Lukat*, 2018 WL 817841, at *2. The trial

2

court ruled that evidence of the convictions was admissible, and a St. Paul police officer later testified about them. *Id.*

The jury convicted Petitioner on both counts. *Id.* The trial court sentenced him to 60 months in prison. *See Lukat* Register.

### B.   Direct Appeal

Petitioner appealed, arguing that the trial court abused its discretion by admitting testimony about his prior convictions for vehicle theft. *See Lukat*, 2018 WL 817841, at *3. The Minnesota Court of Appeals agreed. *Id.* In that court's view, the way the prosecution introduced the prior-convictions evidence undercut the stated rationale for its admissibility:

> The state argues that the prior convictions were needed to refute Lukat's claim that he did not know that the Civic was stolen. But when the state offered the prior-convictions evidence, it specifically moved to introduce just the fact that Lukat had three prior convictions without any of the underlying facts about the individual prior offenses. The state does not explain how the mere fact that Lukat had previously been convicted of motor-vehicle theft would show that Lukat knew that the Civic was stolen. If the circumstances of the prior offenses were similar to the current offense, it is arguable that evidence about those circumstances would prove that Lukat knew that the Civic was stolen. But, without evidence of the earlier circumstances, it is not apparent how the prior convictions would support any inference other than that Lukat knew that the Civic was stolen because he previously stole cars. Although *Spreigl* evidence may be admitted to show knowledge or absence of mistake, the district court abused its discretion in admitting the prior-convictions evidence because the fact that Lukat had the prior convictions, by itself, showed neither knowledge nor absence of mistake. Thus, the probative value of the evidence was outweighed by its potential for unfair prejudice to Lukat.

*Id.*

However, the court then concluded that a new trial for Lukat was unnecessary, explaining that under the relevant state-law standard, errors in admitting *Spriegl* evidence require a new trial only when "'there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict.'" *Id.* at *3–4 (quoting *State v. Ness*, 707 N.W.2d 676, 681 (Minn. 2006)). Reviewing the record, the court of appeals observed that there was "strong evidence" contradicting Lukat's trial arguments, and thus "there [was] not a reasonable possibility" that the prior-convictions evidence "significantly affected the verdict." *Id.* at *4.

The Minnesota Supreme Court subsequently denied Petitioner's request for review. *Id.* at *1 (noting denial of review).

## II.   Analysis

Petitioner raises a single issue for review. He argues that by admitting the prior-convictions evidence, the trial court violated his "right to fair trial by jury under the Sixth Amendment and Fifth Amendment." (Habeas Pet. 6.) But Respondent argues that Petitioner has procedurally defaulted his claim "because he never presented [it] to the Minnesota Supreme Court as a federal constitutional claim." (Doc. No. 12, Resp't's Answer 7.) Petitioner disagrees and maintains that he did present the relevant argument to the Minnesota state courts. (Doc. No. 15, Pet'r's Traverse 1–5.)

Under 28 U.S.C. § 2254(b)(1)(A), "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." The Supreme Court has explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations and quotation marks omitted); *see also Nash v. Russell*, 807 F.3d 892, 898 (8th Cir. 2015). A claim has been "fairly presented" to the state courts if "the state court rules on the merits of [the petitioner's] claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

In addressing Respondent's procedural-default argument, Petitioner contends that the Minnesota Court of Appeals applied the wrong standard in its analysis of whether admission of the prior-convictions evidence was harmless.[1] (Pet'r's Traverse 5; Pet'r's Mem. 5–6.) As discussed above, the Minnesota Court of Appeals applied a harmless error standard to determine "'whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict.'" *Lukat*, 2018 WL 817841, at *3 (quoting *Ness*, 707 N.W.2d at 631). Based on his briefing in this matter, Petitioner appears to believe that the correct standard was either (1) whether the error was "harmless beyond reasonable doubt," a standard he attributes to *Chapman v. California*,

---

[1] Petitioner does *not* argue that the Minnesota state courts erred in holding the prior-convictions evidence introduced at his trial admissible. That argument would be fruitless, given that the Minnesota Court of Appeals agreed with Petitioner that admitting that evidence was an abuse of discretion by the trial court. *See Lukat*, 2018 WL 817841, at *2.

5

386 U.S. 18 (1967); or (2) whether the error "had a substantial and injurious effect or influence [on] the jury in determining the jury verdict," which he attributes to *Brecht v. Abrahamson*, 507 U.S. 619 (1993). (*See* Pet'r's Traverse 5–6; Pet'r's Mem. 6.) Under either formulation, however, the fact remains that Petitioner did not fairly present his harmless-error-standard argument to the Minnesota courts. Specifically, Petitioner failed to present it to the Minnesota Supreme Court. *See, e.g.*, *Latimer v. Smith*, 351 F. Supp. 3d 1218, 1224 (D. Minn. 2018).

The Minnesota Supreme Court summarily denied review of the court of appeals' opinion; this denial did not reach the merits of Petitioner's argument before the court of appeals, nor did it address that court's application of the harmless-error standard of review. Thus, whether Petitioner fairly presented his harmless-error-standard argument to the state courts turns on whether he presented that argument to the Minnesota Supreme Court in a manner that entitled him to a ruling on the merits. *Gentry*, 175 F.3d at 1083. In his appeal to the Minnesota Supreme Court, Petitioner must have referred to "'to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Nash*, 807 F.3d at 898 (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161–62 (8th Cir. 1999) (en banc)).

Petitioner's petition for review to the Minnesota Supreme Court was five pages in length. (*See* Doc. No. 1, App'x B.) It does not refer to any federal constitutional right or federal constitutional provision. (*Id.* at 1–5.) It does not cite any cases save for the court

6

of appeals decision under review. (*Id.*) In sum, the petition for review did not alert the Minnesota Supreme Court that Petitioner was raising a federal issue.[2]

When discussing harmless error, the petition for review repeatedly suggests that the Minnesota Court of Appeals merely erred in its harmless-error analysis. (*Id.* at 4–5.) Nowhere in the petition for review is it argued that the court of appeals used the *wrong* harmless-error standard. In fact, the petition invokes the very same harmless-error standard on which the court of appeals relied. (*See id.* at 5 ("Because the record shows more than a reasonable possibility that the erroneous admission of the prior crimes evidence significantly affected the jury's verdicts, this court should review the court of appeals' decision . . . .")); *Lukat*, 2018 WL 817841, at *3 (stating that errors in *Spriegl*-evidence admission demand a new trial when "there is a reasonable possibility that the

---

[2]   Petitioner seems to suggest that merely referencing harmless error was enough to fairly present his argument to the Minnesota Supreme Court. (*See* Pet'r's Traverse 2, 4 (citing *Tamapua v. Shimoda*, 796 F.2d 261, 262 (9th Cir. 1986)).) In *Tamapua*, the Ninth Circuit reversed the denial of a § 2254 petition. 796 F.2d at 262. The petitioner in *Tamapua* argued in state court that there was insufficient evidence to support his conviction but did not used the phrase "due process of law." *Id.* at 262–63. Once in federal court, he began using due-process language to describe this evidentiary insufficiency. *Id.* at 263. The federal district court said that the due-process argument had not been fairly presented below, but the Ninth Circuit disagreed, stating that "[a] habeas petitioner may . . . reformulate somewhat the claims made in state court" and that "exhaustion requires only that the substance of the federal claim be fairly presented." *Id.* at 262. On this view, if the arguments to the state courts were "essentially the same" as the arguments made in the § 2254 petition, the arguments were fairly presented. *Id.* Even if Petitioner's harmless error argument is "essentially the same" as the arguments he made in state court, the Supreme Court abrogated this aspect of *Tamapua* in *Duncan v. Henry*, 513 U.S. 364 (1995). *See, e.g.*, *Johnson v. Zenon*, 88 F.3d 828, 829–30 (9th Cir. 1996) (discussing *Tamapua* and *Duncan* and concluding that "[a]fter *Duncan*, *Tamapua*'s 'essentially the same' standard is no longer viable"). Thus, insofar as Petitioner's argument relies on *Tamapua*, Petitioner's argument fails.

wrongfully admitted evidence significantly affected the verdict") (citation and internal quotation marks omitted). In sum, the petition for review did not challenge the harmless-error standard that the court of appeals applied. It follows that Petitioner failed to present his harmless-error-standard argument to the Minnesota Supreme Court in a manner entitling him to a ruling on the merits. Thus, because Petitioner did not fairly present his harmless-error argument to the Minnesota Supreme Court, he did not exhaust his claim in state court.[3]

Petitioner has already pursued a direct appeal, so the remaining state-court route for him to challenge his conviction is a petition for postconviction review. In Minnesota, however, *State v. Knaffla* requires that "where [a] direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." 243 N.W.2d 737, 741 (Minn. 1976); *see also Anderson v. State*, 830 N.W.2d 1, 8 (Minn. 2013) ("[A] petition for postconviction relief raising claims that were raised on direct appeal, or were known *or should have been known* but were not raised at the time of the direct appeal, are procedurally barred.") (emphasis added). Petitioner could have raised his present harmless-error-standard

---

[3]   Petitioner cites *Grey v. Hoke*, 933 F.2d 117 (2d Cir. 1991), for the proposition that even if a petitioner failed to fairly present a claim to the state courts, "courts may dispense with the exhaustion requirement if further state litigation would be futile." (Traverse 4.) In *Grey*, the Second Circuit confirmed that there is no need to make a § 2254 petitioner exhaust a claim in state court when state procedural bars make pressing that claim there impossible. 933 F.2d at 120. But exhaustion being unnecessary does not mean that a federal habeas court should consider the claim's merits; instead, the futility of future state-court proceedings (combined with the failure to exhaust) means that the claim is procedurally defaulted and that a federal habeas court may not consider it. *Id.* at 121.

argument before the Minnesota Supreme Court, but he failed to do so. Having failed to fairly present the argument before, and being *Knaffla*-barred from presenting it now, Petitioner procedurally defaulted the claim. A petitioner can escape the consequences of procedural default by showing cause and prejudice excusing the default, but Petitioner's filings make no attempt to do so. (*See* Traverse 1–5.) As a result, the Court may not reach the merits of Petitioner's sole claim in this action.

### III.     Certificate of Appealability

A § 2254 petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When, as here, "the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, it is unlikely that any other court—including the Eighth Circuit—would treat the Petition differently than it is being treated here. This Court therefore recommends that Petitioner not be issued a COA in this matter.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition (Doc. No. 1) be **DENIED**; and

2. A Certificate of Appealability not be issued.

Date: August 9, 2019

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).